## *United States Bankruptcy Court*
## *For the District of Massachusetts*
## *Central Division*

|  |  |
|---|---|
| In re | ) |
|  | ) |
| **Peter Murphy Ribaudo** | ) |
|  | ) |
| Debtor | ) |

Case No. **10-43081**
Chapter **13**

### <u>MOTION FOR ORDER TO SHOW CAUSE:  Deutsche Bank National Trust</u>

### <u>Company as Indenture Trustee of the IndyMac Home Equity Mortgage Loan</u>

### <u>Asset-Backed Trust, Series 2006-H4</u>

The debtor moves this Court for an Order to Show Cause why Deutsche Bank National Trust Company as Indenture Trustee of the IndyMac Home Equity Mortgage Loan Asset-Backed Trust, Series 2006-H4 ("Deutsche Bank") should not be held in contempt for fraud on the Court and further ordered to pay appropriate sanctions and penalties, including reimbursement to the debtor for his counsel's fees necessary to uncover the fraud.

In support thereof, the debtor states:

1.      The debtor filed his Chapter 13 petition on June 17, 2010.  The Court dismissed his petition at his request on September 8, 2011.  The case has not yet been closed.

2.  Prior to dismissal, the debtor filed an Amended Objection to Deutsche's Proof of Claim, docketed as Claim No. 4, alleging that Deutsche Bank committed fraud on the Court.  A false document was attached to its proof of claim.

   a.  Exhibit A to this Motion is the Home Equity Line of Credit (HELOC) Note which was attached to Deutsche's proof of claim.  The next to last page shows a May 22, 2006 stamped endorsement from the original lender People's Mortgage Corporation to IndyMac Bank, F.S.B. and then duplicate undated stamped endorsements in blank from IndyMac Bank, F.S.B. by Melody Spotts, Assistant Vice President.  Please see Exhibit A.

   b.  Exhibit B is the Home Equity Line of Credit (HELOC) Note which was produced during informal discovery.  The next to last page shows that it is <u>another version</u> of this blank-endorsed HELOC Note.  It has the same May 22, 2006 stamped endorsement from the original lender People's Mortgage Corporation to IndyMac Bank, F.S.B. but it now is stamp-endorsed by Renea Crosby, Vice President instead of Melody Spotts.  Please see Exhibit B.

   c.  Exhibit C is a document consisting solely of the two documents' endorsement pages, allowing for a convenient comparison of the different endorsements.

3.      Two versions of this HELOC Note are in circulation.  There is no other explanation for either the Spotts version or the Crosby version to be without the other IndyMac blank-stamped endorsement.

4.      Deutsche, through counsel, has represented that Exhibit B is a true copy of the original <u>and not the copy attached to the filed proof of claim</u> (Exhibit A).

5.      The only explanation is that someone made a copy of the HELOC Note and stamped an endorsement on that copy, which was then attached to Deutsche's proof of claim.  The original HELOC Note was then endorsed in a different fashion.

6.      The filing of the proof of claim is a representation to the Court that the claim's attached copy of the HELOC Note was a true copy of the original.

7.      The debtor asserts that the filing of the endorsed copy was a misrepresentation to the Court.

8.      The debtor notes the legend at the bottom of the Official Form: "Penalty for presenting fraudulent claim Fine up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571."

9.      The debtor respectfully brings to the Court's attention the following:

SARBANES OXLEY TITLE VIII

TITLE VIII—CORPORATE AND CRIMINAL FRAUD ACCOUNTABILITY

SEC. 801. SHORT TITLE.

This title may be cited as the "Corporate and Criminal Fraud Accountability Act of 2002".

SEC. 802. CRIMINAL PENALTIES FOR ALTERING DOCUMENTS.

(a) IN GENERAL.—Chapter 73 of title 18, United States Code, is amended by adding at the end the following:

"§ 1519. Destruction, alteration, or falsification of records in Federal investigations and bankruptcy

"Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

10.    An order to show cause is the appropriate remedy. Attached as Exhibit D is the June 14, 2011 Order to Show Cause issued against OneWest Bank FSB in *In re Arizmendi*, Case No. 09-19263-PB13 (Bankr. S.D. Cal. 06/14/11).  Attached as Exhibit E is the August 12, 2011 Order After Hearing on Court's Order To Show Hearing in the same case.  The *Arizmendi* result was an award of attorney fees and a future $25,000.00 sanction for each event where that court determines a repeat misrepresentation took place.

11.    The dismissal of the petition does not moot the fraud on the Court or a motion for an order to show cause:

While there is no controlling law in this Circuit, the apparent majority rule in other jurisdictions is that bankruptcy courts may continue to exercise

jurisdiction over pending adversary proceedings even after a dismissal of a related bankruptcy petition.  See 2 Collier on Bankruptcy P 349.03 & nn. 4a, 4b (1993); Bankruptcy Service, L. Ed. § 3C:99 (1989). Some courts continue to exercise jurisdiction "for cause shown" under 11 U.S.C. § 349(b). Some retain jurisdiction for other reasons or as a matter of course.  *Rhode Island Hospital Trust Nat'l Bank v Bogosian (In re Belmont Realty Corp.)*, 11 F.3d. 1092, 1099 (1st Cir. 1993).  (Case citations omitted.)

Wherefore the debtor prays for an order for Deutsche Bank to show cause why it should not be held in contempt and ordered to reimburse the debtor for his counsel fees related to this investigation, and that the Court order such other and further relief as is just.

Debtor, by counsel

/s/ L.  Jed Berliner, Esquire
L. Jed Berliner, Esquire, BBO # 039950
Berliner Law Firm
95 State Street, Suite 1010
Springfield, MA  01103-2081
tel: (413) 788-9877; facsimile: (413) 746-9877
email:  jed@berlinerlaw.com

### Certificate of Service

The undersigned certifies that this document and the MLRB-required Notice below was filed with the Court in a manner appropriate for automated service of true electronic images to all ECF Registrants in this Case or Proceeding, including the Case Trustee and the U.S. Trustee and Deutsche Bank's attorney.

Date:   September 12, 2011

/s/ Jed Berliner
L. Jed Berliner

**EXHIBIT A - COPY OF HELOC NOTE ATTACHED TO FILED PROOF OF CLAIM**

| | PEOPLE'S MORTGAGE CORPORATION |
|---|---|
| Peter M. Ribando | 330 SWANSEA MALL DRIVE |
| | SWANSEA, MASSACHUSETTS 02777 |
| | **Lender's Name and Address** "We," "us" or "our" means the lender named above. |
| **Address** | No. ████ |
| 76 Chickering Road | Date  MAY          10 ,  2006 |
| Spencer, MASSACHUSETTS 01562 | Credit Limit $          64,000.00 |
| **Borrower's Name and Address** "You" or "your" means each borrower above, jointly and severally. | Draw Period  TEN (10) YEARS Repayment Period  TEN (10) YEARS Maturity Date:  APRIL          15 ,  2026 |

## HOME EQUITY LINE OF CREDIT

1. **GENERALLY:** This agreement (the "Agreement") sets out the terms and conditions of your home equity line of credit (the "Line of Credit" or the "Line of Credit Account"). Many of the terms we use in this Agreement have special meanings:

   - The "Line of Credit Account Balance" is the sum of the unpaid principal of loans made under your Line of Credit, plus unpaid but earned finance charges, plus any costs, expenses, and fees that are due.
   - The "Credit Limit" is the maximum amount of principal we ordinarily will allow you to owe us under your Line of Credit at any time.
   - The "Billing Cycle" means the period of time normally covered by monthly periodic statements and includes such period of time even when a statement is not sent because there is no balance on your Line of Credit Account for that period.
   - An "Equity Card" is any credit card we issue to allow you to obtain advances on your Line of Credit.
   - The "Draw Period" is the period during which you may request advances on your Line of Credit.
   - The "Repayment Period" is the period during which you must repay your Line of Credit Account Balance and may not request further advances.

   If any term of this Agreement violates any law or for some other reason is not enforceable, the term will not be part of this Agreement.

2. **PROMISE TO PAY:** You promise to pay to us, or our order, the total principal of all loans made under your Line of Credit, together with all finance charges, costs, expenses, and fees for which you are responsible under this Agreement. If there is more than one of you, each is jointly and severally liable on this Agreement. This means that we can require any one of you to pay all amounts due under this Agreement, including loans made to any of you, even if in excess of the authorized Credit Limit. Each of you authorizes any other Borrower, on his or her request alone, to cancel the Line of Credit, request and receive advances of principal under your Line of Credit, and to do all actions in connection with the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the others will remain fully responsible hereunder.

3. **TAX DEDUCTIBILITY:** You understand that we (including our employees and representatives) do not make any representations or warranties to you about the tax consequences -- including the deductibility of interest or fees -- of you establishing or using this Line of Credit, and we will not be liable if interest or fees are not deductible. You should consult a tax advisor regarding the deductibility of interest and charges under your Line of Credit.

4. **REQUESTING A LOAN:** During the Draw Period, you may request a loan under your Line of Credit by the following methods:

   - You write a special check that we have given you for this purpose (the "Equity Check").
   - You use an Equity Card for purchase transactions or cash advances.
   - You authorize us to pay a designated third person or account.

   You may not obtain advances under the Line of Credit until any rescission period provided by federal law has expired and we are reasonably satisfied that none of the persons entitled to rescind had rescinded this Agreement and the Line of Credit.

Initials _[signature]_

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)
DOCPREP SERVICES, INC.  FORM - INDYACMA-4866

Page 1 of 8
VMP Mortgage Solutions, Inc. (800)521-7291
**ORIGINAL**

IndyMac 2000(MA)
04/05

LOAN NO.:  4701696106

When you request a loan, we will advance exactly the amount you request. The smallest amount we will advance to you when you use an Equity Check is $ _____250.00_____ (the "Minimum Advance"). We will make the advance by depositing the amount in your transaction account, by advancing the money directly to you, or by paying a designated third person or account, depending on how we agree to make the advance. We will record the amount as a loan in your Line of Credit Account.

If you request a loan by writing an Equity Check for less than the Minimum Advance, we may, at our option, grant the request. However, granting the request does not mean we will be required to grant requests for less than the Minimum Advance in the future. We always have the option to deny any such request.

By signing below, each of you requests that we issue each of you an Equity Card. Your use of this Equity Card at automated teller machines is subject to our rules relating to automated teller machine transactions.

We will not ordinarily grant any request for a loan that would cause the unpaid principal balance of your Line of Credit Account to be greater than the Credit Limit listed in this Agreement. We may, at our option, grant such a request without obligating ourselves to do so in the future.

Loans under your Line of Credit may be for any lawful purpose, except that you may not use such loans to pay amounts due on your Line of Credit Account. You will notify us immediately in the event any of your Equity Checks or any of your Equity Cards are lost or stolen.

5.    **HOW PERIODIC FINANCE CHARGES ARE COMPUTED:** Finance charges begin to accrue immediately when we make a loan to you. To figure the finance charge for a Billing Cycle, we apply a daily periodic rate of finance charge to the "average daily balance" of your Line of Credit Account for the Billing Cycle. We then multiply that figure by the number of days in the Billing Cycle. The average daily balance is computed as follows. First we take your Line of Credit Account Balance at the beginning of each day and subtract any unpaid finance charges that are due. Next, we subtract the portion of any payments or credits received that day that apply to the repayment of your loans. (A portion of each payment you make is applied to finance charges.) Then we add any new loans made that day. This gives us the daily balance. Then we add up all the daily balances for the Billing Cycle and divide the total by the number of days in the Billing Cycle. This gives us the "average daily balance."

The paragraph checked below applies to this Agreement.

[X]  Until the end of the **THIRD (3RD)** Billing Cycle after the date of this Agreement (the "Initial Rate Period"), the daily periodic rate of FINANCE CHARGE is ____.0137____ % which corresponds to an **ANNUAL PERCENTAGE RATE** of ___4.990___ %. The annual percentage rate corresponding to the periodic rate includes interest and not other costs.

[ ]  Until the end of the _____ Billing Cycle after the date of this Agreement (the "Initial Rate Period"), the daily periodic rate of finance charge will be determined by discounting the "base rate" described below under the heading **Variable Rate** by _____ percentage points. On the date of this Agreement, this calculation results in a daily periodic rate of FINANCE CHARGE of _____ %, which corresponds to an **ANNUAL PERCENTAGE RATE** of _____ %. The annual percentage rate corresponding to the periodic rate includes interest and not other costs.

The periodic rate and corresponding annual percentage rate described above are the initial rates assessed under this Line of Credit, and are not based on the formula used for later rate adjustments. Had these rates been based on that formula, the daily periodic rate of FINANCE CHARGE would have been ___.0295___ %, which corresponds to an **ANNUAL PERCENTAGE RATE** of ___10.750___ %. At the end of the Initial Rate Period specified above, the rates will be subject to further adjustments and limitations, as described below under the heading **Variable Rate**.

6.    **VARIABLE RATE:** The "annual percentage rate" referred to in this section is the annual rate that corresponds to the periodic rate applied to the balance as described above. The annual percentage rate may change, and will be ___**THREE AND 000/1000**___ percentage points ( ___3.000 %___ ) above the following "base rate:" the highest base rate on corporate loans posted at large U.S. money center commercial banks as published in the Money Rates table of The Wall Street Journal as the Prime Rate. The annual percentage rate may increase if this "base rate" increases. An increase will take effect on the first day of the Billing Cycle. An increase will result in an increase in the finance charge and it may have the effect of increasing your periodic minimum payment. The annual percentage rate will not increase more often than once a month. A decrease will have the opposite effect of an increase described above.

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0804)
DocPrep Services, Inc.  FORM - INDYAGMA-6896

Page 2 of 8
ORIGINAL

Initials _____

IndyMac 2000(MA)
04/05

LOAN NO.:  4701696106

If the base rate changes more frequently than the annual percentage rate, we will always use the base rate in effect on the day we adjust the annual percentage rate to determine the new annual percentage rate. In such a case, we will ignore any changes in the base rate that occur between annual percentage rate adjustments.

This corresponding ANNUAL PERCENTAGE RATE will never exceed 18%, and will never exceed the highest allowable rate for this type of Agreement as determined by applicable state or federal law.

See the Fee Schedule attached hereto and made a part hereof for additional finance charges and other charges on your Line of Credit.

7.    **MONTHLY PAYMENTS:** We will send you a periodic statement for each Billing Cycle in which there is a balance owing under your Line of Credit, or a credit balance, or a finance charge is imposed. The periodic statement will show, among other things, the amount of the minimum monthly payment (the "Minimum Payment") and the date by which it is due. You must pay us at least the Minimum Payment indicated on the periodic statement by the date indicated on the statement.

During the Draw Period, the Minimum Payment is the amount, if any, by which your outstanding principal loan balance exceeds your Credit Limit, plus the greater of: (a) $100.00; or (b) the amount of accrued but unpaid finance charges, late charges, and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument, as described below under the heading Security. During the Draw Period the minimum payment may not fully repay the principal that is outstanding on your Line of Credit.

During the Repayment Period, the Minimum Payment is the amount, if any, by which your outstanding principal loan balance exceeds your Credit Limit, plus: (a) the amount of accrued but unpaid finance charges, late charges, and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument; and (b) _____.8333_____ % of the principal balance outstanding on the last day of the Draw Period.

If your Minimum Payment includes any other items authorized by this Agreement, we will so advise you, and the periodic statement will include an itemization of such amounts.

You must send all payments to our attention at the address indicated on the periodic statement.

**FINAL PAYMENT:** On the maturity date listed in this Agreement, you must pay the amount of any remaining Line of Credit Account Balance outstanding. The minimum payments may not be sufficient to fully repay the principal that is outstanding on your Line of Credit. If they are not, you will be required to pay the entire outstanding balance in a single balloon payment.

We are not obligated to refinance your loan at that time, but will consider your request to do so. If you refinance this account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

8.    **ADDITIONAL REPAYMENT TERMS:** If your Line of Credit Account Balance on a payment date is less than the amount of the Minimum Payment, your minimum monthly payment will equal the Line of Credit Account Balance.

You can pay off all or part of what you owe at any time. However, so long as you owe any amount you must continue to make your periodic Minimum Payment.

The amounts you pay will be applied first to any fees and charges you owe other than principal and finance charges, then to any finance charges that are due, and finally to principal.

9.    **SECURITY:** We have secured your obligations under this plan by taking a security interest (by way of a separate security agreement, mortgage, deed of trust, or other instrument (the "Security Instrument") dated MAY       10 ,  2006        , in the following property, described by item or type (the "Property"):

76 Chickering Road
Spencer, MASSACHUSETTS 01562

Property securing any other loans that you have with us may also secure this Agreement. You may buy property insurance from anyone you want who is acceptable to us.

10.    **CHANGING TERMS OF THIS AGREEMENT:** Generally, we may not change the terms of this Agreement. However, we may change the terms in the following circumstances:
* If this is a variable rate plan, we may change the index and margin if the original index described in this agreement becomes unavailable. Any new index will have a historical movement similar to the original, and, together with a new margin, will produce a similar interest rate.

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (05/04)
DOCPREP SERVICES, INC. FORM - INDYACMA-6866

Initials _PML_____

IndyMac 2000(MA)
04/05

Page 3 of 9
ORIGINAL

LOAN NO.:  4701696106

- We may make changes that you have agreed to in writing.
- We may make changes that unequivocally benefit you.
- We may make changes to insignificant terms of this Agreement.
- If we are required to send notice of a change in terms, we will send the notice to your address listed in this Agreement. (You should inform us of any change in address.)

11. **YOUR RIGHT TO TERMINATE YOUR RIGHT TO OBTAIN LOANS:**

    **A. Termination.** You may terminate your right to obtain loans by sending us a written notice that will become effective upon receipt by us. If more than one person signs this Agreement as Borrower, your right to obtain loans may be terminated by written notice pursuant to this paragraph signed by any one or more of such persons. We may also suspend your right to obtain loans pursuant to paragraph fourteen (14) below. You must notify the servicer at the following address or at a different address as required by servicer of your intent to terminate.

P.O. BOX 3038
EVANSVILLE, INDIANA 47730

    **B. Effect of Termination.** Upon termination of your Line of Credit Account, you must continue to pay the minimum payment due on or before each payment due date until all amounts owed under this Agreement are paid in full. However, you may be required to repay all obligations immediately if we exercise our rights under paragraph thirteen (13) below. You must return unused Equity Checks upon termination. You may be required to pay an account termination fee pursuant to the Fee Schedule attached hereto and made a part hereof.

12. **ATTORNEYS' FEES:** If you default on this Agreement or become involved in any bankruptcy proceeding, you agree to pay all of our costs, including reasonable attorneys' fees that we incur to collect or enforce this debt.

13. **TERMINATION OF LINE FOR CERTAIN DEFAULTS:** We may terminate your Line of Credit Account, require you to pay the entire outstanding balance in one payment, and charge you a termination fee (if provided for in this Agreement) and fees related to the collection of the amount owing, if:
    (1) You engage in fraud or material misrepresentation in connection with your Line of Credit;
    (2) You fail to make a payment as required by this Agreement; or
    (3) Your action or inaction adversely affects the collateral or our rights in the collateral.

    In that instance, we may take other action short of termination, such as charging you a fee if you fail to maintain required property insurance and we purchase insurance.
    Even if we choose not to use one of our remedies when you default, we do not forfeit our right to do so if you default again. If we do not use a remedy when you default, we can still consider your actions as a default in the future.

14. **SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT:** We may prohibit you from obtaining additional extensions of credit, or reduce your Credit Limit if:
    (1) The value of the dwelling securing this home equity Line of Credit declines significantly below its appraised value for purposes of this Line of Credit;
    (2) We reasonably believe you will not be able to meet the repayment requirements due to a change in your financial circumstances;
    (3) Your payment history on this home equity Line of Credit is not satisfactory;
    (4) You are in default of an obligation of this Agreement or any agreement securing this Agreement, which shall include, but is not limited to, your ongoing obligation to supply us with information we feel we need to assess your financial condition;
    (5) A governmental action prevents us from imposing the annual percentage rate provided for in this Agreement;
    (6) The action of a governmental body adversely affects our security interest to the extent that the value of the security interest is less than 120% of the home equity Line of Credit;
    (7) The annual percentage rate corresponding to the periodic rate reaches the maximum rate allowed under this Line of Credit (if provided for in this Agreement); or
    (8) A regulatory agency has notified us that continued advances would constitute an unsafe and unsound practice.

Initials _PMK_

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0804)
DOCPREP SERVICES, INC. FORM - INDYACMA-6806

Page 4 of 8
ORIGINAL

LOAN NO.:   4701696106

IndyMac 2000(MA)
04/05

In the event that we suspend your right to additional advances or reduce your Credit Limit, we will send you notice of our decision at the address listed in this Agreement. (You should inform us of any change in your address.) If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under your Line of Credit, and you believe that your situation has changed, you must request that we re-evaluate your situation, and reinstate your credit privileges.

15.     **RIGHT TO CURE:** If you have been in default on this Agreement for ten (10) or more days, we must provide you with a written notice to cure before we may exercise our remedies. We may exercise our remedies only if you fail to cure your default within the time specified in the notice. No notice of right to cure is necessary and we may immediately exercise our remedies if you have cured a default after the notice to cure on three or more occasions prior to the current default. If you are in default because of a failure to make payments when due, you may cure the default at any time unless we have notified you that we have accelerated the unpaid balance, brought an action against you, or proceeded against the security for this Plan.

16.     **WAIVERS AND CONSENT:** To the extent not prohibited by law and subject to any required notice and opportunity to cure a default for failure to make a required payment, you waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

To the extent permitted by applicable law, you waive your right to the benefit of exemption under federal or Massachusetts law as to your Property securing, or to secure, this Agreement. If required by law, we will provide you with separate written statement regarding the waiver of your right of exemption.

17.     **REPRESENTATIONS AND WARRANTIES:** You represent and warrant to us that the information contained in the loan application, in each material respect, was true at the time the loan application was completed.

You represent and warrant to us that the terms of any existing Security Instrument on the Property permit us to enter into this Agreement and that the loans secured by such existing deed of trust or mortgage are current in all material respects and are not in default.

18.     **LOAN CHARGES:** If your Line of Credit Account is subject to a law that sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected, or to be collected, in connection with your Line of Credit Account exceeds the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you that exceeded permitted limits will be refunded to you. We will refund such excess either by reducing the principal owed under your Line of Credit Account or by making a direct payment to you. If we apply the excess toward reducing the principal balance, such reduction shall be treated as a partial prepayment hereunder.

19.     **APPLICABLE LAW:** Federal law applies to certain aspects of this Agreement, including, but not limited to, the interest rate and related charges. The law of the state where you and the Property are located will apply to the extent legally required. If any term of this Agreement violates any law or for some reason is not enforceable, or becomes unenforceable, that term will not be part of this Agreement.

If the Lender listed on page one of this Agreement is not IndyMac Bank, F.S.B., the following provisions apply to this Agreement: This is to inform you that your loan is an alternative mortgage loan within the definition of the Federal Alternative Mortgage Transactions Parity Act of 1982 (the "Parity Act") (12 U.S.C. 3801 et seq.) and the implementing regulations adopted by the Office of Thrift Supervision ("OTS") (12 C.F.R. 560.220, 560.35 and 560.210). Your loan will be made by us in accordance with the Parity Act requirements of the OTS rather than the provisions of state law. In this regard, pursuant to the authority granted by the Parity Act and the OTS Parity Act regulations, certain state laws will not apply to this loan.

20.     **CREDIT INFORMATION:** You agree to supply us with whatever information we reasonably feel we need to decide whether to continue this Line of Credit. We agree to make requests for this information without undue frequency, and to give you reasonable time in which to supply the information.

You authorize us to make or have made any credit inquiries we feel are necessary. You also authorize the person or agencies to whom we make these inquiries to supply us with the information we request.

21.     **CREDIT INSURANCE DISCLOSURE: YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE AND CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.**

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (09/04)
DOCPREP SERVICES, INC. FORM - INDYAGMA-6866

Initials _PMR_

Page 8 of 8
ORIGINAL

IndyMac 2000(MA)
04/05

LOAN NO.: 4701696106

ADDITIONAL TERMS

## YOUR BILLING RIGHTS – KEEP THIS NOTICE FOR FUTURE USE
This notice contains important information about your rights and our
responsibilities under the Fair Credit Billing Act.

*Notify Us In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking, share draft or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities*
*After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases*

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or the services. There are two limitations on this right:

    (a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

    (b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0804)
*DOCPREP SERVICES, INC.* FORM - INDYAGMA-6866

Page 8 of 8
**ORIGINAL**

Initials *PMK* _____ _____

IndyMac 2000(MA)
04/05

LOAN NO.:  4701696106

22.    SIGNATURES: By signing below, you agree to the terms of this Agreement and you promise to pay any amounts you owe under this Agreement. You also state that you received a completed copy of this Agreement on today's date.
*** FEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF

_____(Seal)          _____(Seal)
                          -Borrower                                -Borrower
Peter M. Ribando

_____(Seal)          _____(Seal)
                          -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                -Borrower

Pay To The Order Of

Without Recourse
IndyMac Bank, F.S.B.
By:

Melody Spotts
Assistant Vice President

PAY TO THE ORDER OF
IndyMac Bank, F.S.B.
WITHOUT RECOURSE
THIS   22nd   DAY OF  May, 2006
PEOPLE'S MORTGAGE CORPORATION
By: Lisa M. Williams/Asst. Secretary

Pay To The Order Of

Without Recourse
IndyMac Bank, F.S.B.
By:

Melody Spotts
Assistant Vice President

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)
DOCPREP SERVICES, INC. FORM - INDYAGMA-6866

Page 7 of 8
ORIGINAL

LOAN NO.: ▮▮▮▮▮▮▮

IndyMac 2000(MA)
04/05

## FEE SCHEDULE

You agree to pay the following additional charges in connection with your Line of Credit:

1. **ADDITIONAL FINANCE CHARGES:** You agree to pay the following additional FINANCE CHARGES:
   **\*\*\* FEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF**

   | | |
   |---|---|
   | Application Fee | $ *** |
   | Broker Fee | $ *** |
   | Closing Agent Fee | $ *** |
   | Flood Certification Fee | $ *** |
   | Lender Fees | $ *** |
   | Origination Fee | $ *** |
   | Points | $ *** |
   | Processing Fee | $ *** |
   | Tax Service Fee | $ *** |
   | (Other) _____ | $ *** |

2. **OTHER CHARGES:** You agree to pay the following additional charges:
   **\*\*\* FEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF**

   | | |
   |---|---|
   | Appraisal Fee | $ *** |
   | Check Re-order Fee | $ *** |
   | Credit Report Fee | $ *** |
   | Documentation Fee | $ *** |
   | Recording/Filing Fee | $ *** |
   | Title Insurance Fee | $ *** |
   | Title Search Fee | $ *** |
   | (Misc.) _____ | $ *** |

   * An annual charge of $75.00.
   * A termination fee of $500.00 if terminated within the first three years.
   * A late charge on any payment not paid within 15 days of the payment date of 5% of the payment or $10.00, whichever is less.
   * A charge of $10.00 for any advance made by special check in an amount less than the Minimum Advance.
   * A charge of $10.00 per credit transaction that is in excess of your Credit Limit.
   * A fee of $25.00 for each check, negotiable order of withdrawal or draft you issue in connection with this loan that is returned because it has been dishonored.
   * A fee of $10.00 to stop payment.

Other charges will be assessed in accordance with the terms of the Line of Credit Agreement.

This Fee Schedule supplements the Line of Credit Agreement and is incorporated therein. Nothing contained in this Fee Schedule shall be deemed to impair in any way your obligations under the Line of Credit Agreement, the related security agreement, mortgage, or deed of trust, or any other document executed by you concerning the indebtedness evidenced by the Line of Credit Agreement.

   **\*\*\* FEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF**

| _____ (Seal) | _____ (Seal) |
|---|---|
| -Borrower | -Borrower |
| Peter M. Ribaudo | |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)
DOCPREP SERVICES, INC. FORM - INDYAGMA-6844

IndyMac 2000(MA)
04/05

Page 8 of 8
ORIGINAL        LOAN NO.: ████████

**EXHIBIT B - COPY OF HELOC NOTE PRODUCED THROUGH INFORMAL DISCOVERY**

| | |
|---|---|
| Peter M. Ribaudo | **PEOPLE'S MORTGAGE CORPORATION** |
| | **330 SWANSEA MALL DRIVE** |
| | **SWANSEA, MASSACHUSETTS 02777** |
| | |
| | **Lender's Name and Address** |
| | "We," "us" or "our" means the lender named above. |
| **Address** | No.   4701696106 |
| 76 Chickering Road | Date   MAY                 10 ,  2006 |
| Spencer, MASSACHUSETTS 01562 | Credit Limit $       64,000.00 |
| **Borrower's Name and Address** | Draw Period   TEN (10) YEARS |
| "You" or "your" means each borrower above, | Repayment Period   TEN (10) YEARS |
| jointly and severally. | Maturity Date:   APRIL             15 ,  2026 |

## HOME EQUITY LINE OF CREDIT

1. **GENERALLY:** This agreement (the "Agreement") sets out the terms and conditions of your home equity line of credit (the "Line of Credit" or the "Line of Credit Account"). Many of the terms we use in this Agreement have special meanings:

- The "Line of Credit Account Balance" is the sum of the unpaid principal of loans made under your Line of Credit, plus unpaid but earned finance charges, plus any costs, expenses, and fees that are due.
- The "Credit Limit" is the maximum amount of principal we ordinarily will allow you to owe us under your Line of Credit at any time.
- The "Billing Cycle" means the period of time normally covered by monthly periodic statements and includes such period of time even when a statement is not sent because there is no balance on your Line of Credit Account for that period.
- An "Equity Card" is any credit card we issue to allow you to obtain advances on your Line of Credit.
- The "Draw Period" is the period during which you may request advances on your Line of Credit.
- The "Repayment Period" is the period during which you must repay your Line of Credit Account Balance and may not request further advances.

If any term of this Agreement violates any law or for some other reason is not enforceable, the term will not be part of this Agreement.

2. **PROMISE TO PAY:** You promise to pay to us, or our order, the total principal of all loans made under your Line of Credit, together with all finance charges, costs, expenses, and fees for which you are responsible under this Agreement. If there is more than one of you, each is jointly and severally liable on this Agreement. This means that we can require any one of you to pay all amounts due under this Agreement, including loans made to any of you, even if in excess of the authorized Credit Limit. Each of you authorizes any other Borrower, on his or her request alone, to cancel the Line of Credit, request and receive advances of principal under your Line of Credit, and to do all actions in connection with the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the others will remain fully responsible hereunder.

3. **TAX DEDUCTIBILITY:** You understand that we (including our employees and representatives) do not make any representations or warranties to you about the tax consequences -- including the deductibility of interest or fees -- of you establishing or using this Line of Credit, and we will not be liable if interest or fees are not deductible. You should consult a tax advisor regarding the deductibility of interest and charges under your Line of Credit.

4. **REQUESTING A LOAN:** During the Draw Period, you may request a loan under your Line of Credit by the following methods:

- You write a special check that we have given you for this purpose (the "Equity Check").
- You use an Equity Card for purchase transactions or cash advances.
- You authorize us to pay a designated third person or account.

You may not obtain advances under the Line of Credit until any rescission period provided by federal law has expired and we are reasonably satisfied that none of the persons entitled to rescind had rescinded this Agreement and the Line of Credit.

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)                                    Page 1 of 8                                    IndyMac 2000(MA)
*DOCPREP SERVICES, INC.*  FORM - INDYAGMA-6866        VMP Mortgage Solutions, Inc. (800)521-7291                    04/05

Initials _____  _____  _____

**ORIGINAL**          **LOAN NO.:**   4701696106

When you request a loan, we will advance exactly the amount you request. The smallest amount we will advance to you when you use an Equity Check is $ _____ 250.00 _____ (the "Minimum Advance"). We will make the advance by depositing the amount in your transaction account, by advancing the money directly to you, or by paying a designated third person or account, depending on how we agree to make the advance. We will record the amount as a loan in your Line of Credit Account.

If you request a loan by writing an Equity Check for less than the Minimum Advance, we may, at our option, grant the request. However, granting the request does not mean we will be required to grant requests for less than the Minimum Advance in the future. We always have the option to deny any such request.

By signing below, each of you requests that we issue each of you an Equity Card. Your use of this Equity Card at automated teller machines is subject to our rules relating to automated teller machine transactions.

We will not ordinarily grant any request for a loan that would cause the unpaid principal balance of your Line of Credit Account to be greater than the Credit Limit listed in this Agreement. We may, at our option, grant such a request without obligating ourselves to do so in the future.

Loans under your Line of Credit may be for any lawful purpose, except that you may not use such loans to pay amounts due on your Line of Credit Account. You will notify us immediately in the event any of your Equity Checks or any of your Equity Cards are lost or stolen.

**5.    HOW PERIODIC FINANCE CHARGES ARE COMPUTED:** Finance charges begin to accrue immediately when we make a loan to you. To figure the finance charge for a Billing Cycle, we apply a daily periodic rate of finance charge to the "average daily balance" of your Line of Credit Account for the Billing Cycle. We then multiply that figure by the number of days in the Billing Cycle. The average daily balance is computed as follows. First we take your Line of Credit Account Balance at the beginning of each day and subtract any unpaid finance charges that are due. Next, we subtract the portion of any payments or credits received that day that apply to the repayment of your loans. (A portion of each payment you make is applied to finance charges.) Then we add any new loans made that day. This gives us the daily balance. Then we add up all the daily balances for the Billing Cycle and divide the total by the number of days in the Billing Cycle. This gives us the "average daily balance."

The paragraph checked below applies to this Agreement.

[X]  Until the end of the **THIRD (3RD)** Billing Cycle after the date of this Agreement (the "Initial Rate Period"), the daily periodic rate of **FINANCE CHARGE** is _____ .0137 _____ % which corresponds to an **ANNUAL PERCENTAGE RATE** of _____ 4.990 _____ %. The annual percentage rate corresponding to the periodic rate includes interest and not other costs.

[ ]  Until the end of the _____ Billing Cycle after the date of this Agreement (the "Initial Rate Period"), the daily periodic rate of finance charge will be determined by discounting the "base rate" described below under the heading **Variable Rate** by _____ percentage points. On the date of this Agreement, this calculation results in a daily periodic rate of **FINANCE CHARGE** of _____ %, which corresponds to an **ANNUAL PERCENTAGE RATE** of _____ %. The annual percentage rate corresponding to the periodic rate includes interest and not other costs.

The periodic rate and corresponding annual percentage rate described above are the initial rates assessed under this Line of Credit, and are not based on the formula used for later rate adjustments. Had these rates been based on that formula, the daily periodic rate of **FINANCE CHARGE** would have been _____ .0295 _____ %, which corresponds to an **ANNUAL PERCENTAGE RATE** of _____ 10.750 _____ %. At the end of the Initial Rate Period specified above, the rates will be subject to further adjustments and limitations, as described below under the heading **Variable Rate.**

**6.    VARIABLE RATE:** The "annual percentage rate" referred to in this section is the annual rate that corresponds to the periodic rate applied to the balance as described above. The annual percentage rate may change, and will be _____ **THREE AND 000/1000** _____ percentage points ( _____ **3.000 %** ) above the following "base rate:" the highest base rate on corporate loans posted at large U.S. money center commercial banks as published in the Money Rates table of The Wall Street Journal as the Prime Rate. The annual percentage rate may increase if this "base rate" increases. An increase will take effect on the first day of the Billing Cycle. An increase will result in an increase in the finance charge and it may have the effect of increasing your periodic minimum payment. The annual percentage rate will not increase more often than once a month. A decrease will have the opposite effect of an increase described above.

**IndyMac Bank**
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)
*Docprep Services, Inc.* FORM - INDYAGMA-6866                    Page 2 of 8
ORIGINAL

Initials _/_____ ____ ____ ____

IndyMac 2000(MA)
04/05

LOAN NO.:    4701696106

If the base rate changes more frequently than the annual percentage rate, we will always use the base rate in effect on the day we adjust the annual percentage rate to determine the new annual percentage rate. In such a case, we will ignore any changes in the base rate that occur between annual percentage rate adjustments.

This corresponding **ANNUAL PERCENTAGE RATE** will never exceed 18%, and will never exceed the highest allowable rate for this type of Agreement as determined by applicable state or federal law.

**See the Fee Schedule attached hereto and made a part hereof for additional finance charges and other charges on your Line of Credit.**

7.   **MONTHLY PAYMENTS:** We will send you a periodic statement for each Billing Cycle in which there is a balance owing under your Line of Credit, or a credit balance, or a finance charge is imposed. The periodic statement will show, among other things, the amount of the minimum monthly payment (the "Minimum Payment") and the date by which it is due. You must pay us at least the Minimum Payment indicated on the periodic statement by the date indicated on the statement.

During the **Draw Period**, the Minimum Payment is the amount, if any, by which your outstanding principal loan balance exceeds your Credit Limit, plus the greater of: (a) $100.00; or (b) the amount of accrued but unpaid finance charges, late charges, and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument, as described below under the heading **Security**. During the Draw Period the minimum payment may not fully repay the principal that is outstanding on your Line of Credit.

During the **Repayment Period**, the Minimum Payment is the amount, if any, by which your outstanding principal loan balance exceeds your Credit Limit, plus: (a) the amount of accrued but unpaid finance charges, late charges, and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument; and (b) _____.8333_____ % of the principal balance outstanding on the last day of the Draw Period.

If your Minimum Payment includes any other items authorized by this Agreement, we will so advise you, and the periodic statement will include an itemization of such amounts.

You must send all payments to our attention at the address indicated on the periodic statement.

**FINAL PAYMENT:** On the maturity date listed in this Agreement, you must pay the amount of any remaining Line of Credit Account Balance outstanding. The minimum payments may not be sufficient to fully repay the principal that is outstanding on your Line of Credit. If they are not, you will be required to pay the entire outstanding balance in a single balloon payment.

We are not obligated to refinance your loan at that time, but will consider your request to do so. If you refinance this account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

8.   **ADDITIONAL REPAYMENT TERMS:** If your Line of Credit Account Balance on a payment date is less than the amount of the Minimum Payment, your minimum monthly payment will equal the Line of Credit Account Balance.

You can pay off all or part of what you owe at any time. However, so long as you owe any amount you must continue to make your periodic Minimum Payment.

The amounts you pay will be applied first to any fees and charges you owe other than principal and finance charges, then to any finance charges that are due, and finally to principal.

9.   **SECURITY:** We have secured your obligations under this plan by taking a security interest (by way of a separate security agreement, mortgage, deed of trust, or other instrument (the "Security Instrument") dated **MAY       10 ,  2006**_____ , in the following property, described by item or type (the "Property"):

**76 Chickering Road**

**Spencer, MASSACHUSETTS 01562**

Property securing any other loans that you have with us may also secure this Agreement. You may buy property insurance from anyone who is acceptable to us.

10.   **CHANGING TERMS OF THIS AGREEMENT:** Generally, we may not change the terms of this Agreement. However, we may change the terms in the following circumstances:
*   If this is a variable rate plan, we may change the index and margin if the original index described in this agreement becomes unavailable. Any new index will have a historical movement similar to the original, and, together with a new margin, will produce a similar interest rate.

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)
*DOCPREP SERVICES, INC.* FORM - INDYAGMA-6866          Page 3 of 8
ORIGINAL          LOAN NO.:   4701696106

Initials _____          _____

IndyMac 2000(MA)
04/05

- We may make changes that you have agreed to in writing.
- We may make changes that unequivocally benefit you.
- We may make changes to insignificant terms of this Agreement.
- If we are required to send notice of a change in terms, we will send the notice to your address listed in this Agreement. (You should inform us of any change in address.)

**11.    YOUR RIGHT TO TERMINATE YOUR RIGHT TO OBTAIN LOANS:**

**A.  Termination.**  You may terminate your right to obtain loans by sending us a written notice that will become effective upon receipt by us. If more than one person signs this Agreement as Borrower, your right to obtain loans may be terminated by written notice pursuant to this paragraph signed by any one or more of such persons. We may also suspend your right to obtain loans pursuant to paragraph fourteen (14) below. You must notify the servicer at the following address or at a different address as required by servicer of your intent to terminate.

**P.O. BOX 3038**

**EVANSVILLE, INDIANA 47730**

**B.  Effect of Termination.**  Upon termination of your Line of Credit Account, you must continue to pay the minimum payment due on or before each payment due date until all amounts owed under this Agreement are paid in full. However, you may be required to repay all obligations immediately if we exercise our rights under paragraph thirteen (13) below. You must return unused Equity Checks upon termination. You may be required to pay an account termination fee pursuant to the Fee Schedule attached hereto and made a part hereof.

**12.    ATTORNEYS' FEES:**  If you default on this Agreement or become involved in any bankruptcy proceeding, you agree to pay all of our costs, including reasonable attorneys' fees that we incur to collect or enforce this debt.

**13.    TERMINATION OF LINE FOR CERTAIN DEFAULTS:**  We may terminate your Line of Credit Account, require you to pay the entire outstanding balance in one payment, and charge you a termination fee (if provided for in this Agreement) and fees related to the collection of the amount owing, if:
    (1)  You engage in fraud or material misrepresentation in connection with your Line of Credit;
    (2)  You fail to make a payment as required by this Agreement; or
    (3)  Your action or inaction adversely affects the collateral or our rights in the collateral.

In that instance, we may take other action short of termination, such as charging you a fee if you fail to maintain required property insurance and we purchase insurance.

Even if we choose not to use one of our remedies when you default, we do not forfeit our right to do so if you default again. If we do not use a remedy when you default, we can still consider your actions as a default in the future.

**14.    SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT:**  We may prohibit you from obtaining additional extensions of credit, or reduce your Credit Limit if:
    (1)  The value of the dwelling securing this home equity Line of Credit declines significantly below its appraised value for purposes of this Line of Credit;
    (2)  We reasonably believe you will not be able to meet the repayment requirements due to a change in your financial circumstances;
    (3)  Your payment history on this home equity Line of Credit is not satisfactory;
    (4)  You are in default of an obligation of this Agreement or any agreement securing this Agreement, which shall include, but is not limited to, your ongoing obligation to supply us with information we feel we need to assess your financial condition;
    (5)  A governmental action prevents us from imposing the annual percentage rate provided for in this Agreement;
    (6)  The action of a governmental body adversely affects our security interest to the extent that the value of the security interest is less than 120% of the home equity Line of Credit;
    (7)  The annual percentage rate corresponding to the periodic rate reaches the maximum rate allowed under this Line of Credit (if provided for in this Agreement); or
    (8)  A regulatory agency has notified us that continued advances would constitute an unsafe and unsound practice.

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)
DOCPREP SERVICES, INC.  FORM - INDYAGMA-6866                Page 4 of 8

Initials _PMK_  ___  ___

IndyMac 2000(MA)

04/05

ORIGINAL        LOAN NO.:   4701696106

In the event that we suspend your right to additional advances or reduce your Credit Limit, we will send you notice of our decision at the address listed in this Agreement. (You should inform us of any change in your address.) If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under your Line of Credit, and you believe that your situation has changed, you must request that we re-evaluate your situation, and reinstate your credit privileges.

15.   **RIGHT TO CURE:** If you have been in default on this Agreement for ten (10) or more days, we must provide you with a written notice to cure before we may exercise our remedies. We may exercise our remedies only if you fail to cure your default within the time specified in the notice. No notice of right to cure is necessary and we may immediately exercise our remedies if you have cured a default after the notice to cure on three or more occasions prior to the current default. If you are in default because of a failure to make payments when due, you may cure the default at any time unless we have notified you that we have accelerated the unpaid balance, brought an action against you, or proceeded against the security for this Plan.

16.   **WAIVERS AND CONSENT:** To the extent not prohibited by law and subject to any required notice and opportunity to cure a default for failure to make a required payment, you waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

To the extent permitted by applicable law, you waive your right to the benefit of exemption under federal or Massachusetts law as to your Property securing, or to secure, this Agreement. If required by law, we will provide you with separate written statement regarding the waiver of your right of exemption.

17.   **REPRESENTATIONS AND WARRANTIES:** You represent and warrant to us that the information contained in the loan application, in each material respect, was true at the time the loan application was completed.

You represent and warrant to us that the terms of any existing Security Instrument on the Property permit us to enter into this Agreement and that the loans secured by such existing deed of trust or mortgage are current in all material respects and are not in default.

18.   **LOAN CHARGES:** If your Line of Credit Account is subject to a law that sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected, or to be collected, in connection with your Line of Credit Account exceeds the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you that exceeded permitted limits will be refunded to you. We will refund such excess either by reducing the principal owed under your Line of Credit Account or by making a direct payment to you. If we apply the excess toward reducing the principal balance, such reduction shall be treated as a partial prepayment hereunder.

19.   **APPLICABLE LAW:** Federal law applies to certain aspects of this Agreement, including, but not limited to, the interest rate and related charges. The law of the state where you and the Property are located will apply to the extent legally required. If any term of this Agreement violates any law or for some reason is not enforceable, or becomes unenforceable, that term will not be part of this Agreement.

If the Lender listed on page one of this Agreement is not IndyMac Bank, F.S.B., the following provisions apply to this Agreement: This is to inform you that your loan is an alternative mortgage loan within the definition of the Federal Alternative Mortgage Transactions Parity Act of 1982 (the "Parity Act") (12 U.S.C.   3801 et seq.) and the implementing regulations adopted by the Office of Thrift Supervision ("OTS") (12 C.F.R.   560.220, 560.35 and 560.210). Your loan will be made by us in accordance with the Parity Act requirements of the OTS rather than the provisions of state law. In this regard, pursuant to the authority granted by the Parity Act and the OTS Parity Act regulations, certain state laws will not apply to this loan.

20.   **CREDIT INFORMATION:** You agree to supply us with whatever information we reasonably feel we need to decide whether to continue this Line of Credit. We agree to make requests for this information without undue frequency, and to give you reasonable time in which to supply the information.

You authorize us to make or have made any credit inquiries we feel are necessary. You also authorize the person or agencies to whom we make these inquiries to supply us with the information we request.

21.   **CREDIT INSURANCE DISCLOSURE: YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE AND CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.**

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)
DOCPREP SERVICES, INC.   FORM - INDYAGMA-6866        Page 5 of 8

Initials _PMC_ ___ ___ ___
IndyMac 2000(MA)
04/05

ORIGINAL        LOAN NO.:   4701696106

## ADDITIONAL TERMS

### YOUR BILLING RIGHTS -- KEEP THIS NOTICE FOR FUTURE USE
This notice contains important information about your rights and our
responsibilities under the Fair Credit Billing Act.

*Notify Us In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking, share draft or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities*
*After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases*

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or the services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

---

**IndyMac Bank**
**HELOC Agreement - I/O Min Pay - Massachusetts**
**8480623** (0504)
*DocPrep Services, Inc.* FORM - INDYAGMA-6866

Initials *Pmc* ____ ____ ____
**IndyMac 2000(MA)**
**04/05**

22.    **SIGNATURES:** By signing below, you agree to the terms of this Agreement and you promise to pay any amounts you owe under this Agreement. You also state that you received a completed copy of this Agreement on today's date.

   *** **FEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF**

_____ (Seal)                    _____ (Seal)
                              -Borrower                                                  -Borrower
Peter M. Ribaudo

_____ (Seal)                    _____ (Seal)
                              -Borrower                                                  -Borrower

_____ (Seal)                    _____ (Seal)
                              -Borrower                                                  -Borrower

PAY TO THE ORDER OF
IndyMac Bank, F.S.B.
WITHOUT RECOURSE
THIS   22nd   DAY OF  May, 2006
PEOPLE'S MORTGAGE CORPORATION
By: Lisa M. Williams/Asst. Secretary

Pay To The Order Of
Without Recourse
IndyMac Bank, F.S.B.
By: Renea Crosby
Vice President

Pay To The Order Of
Without Recourse
IndyMac Bank, F.S.B.
By: Renea Crosby
Vice President

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)
DOCPREP SERVICES, INC.  FORM - INDYAGMA-6866

Page 7 of 8

ORIGINAL       LOAN NO.:   4701696106

IndyMac 2000(MA)

04/05

## FEE SCHEDULE

You agree to pay the following additional charges in connection with your Line of Credit:

**1.   ADDITIONAL FINANCE CHARGES:  You agree to pay the following additional FINANCE CHARGES:**
*** FEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF

| | |
|---|---|
| Application Fee | $ *** |
| Broker Fee | $ *** |
| Closing Agent Fee | $ *** |
| Flood Certification Fee | $ *** |
| Lender Fees | $ *** |
| Origination Fee | $ *** |
| Points | $ *** |
| Processing Fee | $ *** |
| Tax Service Fee | $ *** |
| (Other) _____ | $ *** |

**2.   OTHER CHARGES:  You agree to pay the following additional charges:**
*** FEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF

- Appraisal Fee $ ***
- Check Re-order Fee $ ***
- Credit Report Fee $ ***
- Documentation Fee $ ***
- Recording/Filing Fee $ ***
- Title Insurance Fee $ ***
- Title Search Fee $ ***
- (Misc.) _____ $ ***
- An annual charge of $75.00.
- A termination fee of $500.00 if terminated within the first three years.
- A late charge on any payment not paid within 15 days of the payment date of 5% of the payment or $10.00, whichever is less.
- A charge of $10.00 for any advance made by special check in an amount less than the Minimum Advance.
- A charge of $10.00 per credit transaction that is in excess of your Credit Limit.
- A fee of $25.00 for each check, negotiable order of withdrawal or draft you issue in connection with this loan that is returned because it has been dishonored.
- A fee of $10.00 to stop payment.

Other charges will be assessed in accordance with the terms of the Line of Credit Agreement.

This Fee Schedule supplements the Line of Credit Agreement and is incorporated therein.  Nothing contained in this Fee Schedule shall be deemed to impair in any way your obligations under the Line of Credit Agreement, the related security agreement, mortgage, or deed of trust, or any other document executed by you concerning the indebtedness evidenced by the Line of Credit Agreement.

*** FEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF

_____ (Seal)          _____ (Seal)
                                        -Borrower                                                      -Borrower
**Peter M. Ribaudo**

_____ (Seal)          _____ (Seal)
                                        -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                                      -Borrower

**EXHIBIT C - SIGNATURE PAGES ONLY OF EXHIBITS' A AND B**

22.  **SIGNATURES:** By signing below, you agree to the terms of this Agreement and you promise to pay any amounts you owe under this Agreement. You also state that you received a completed copy of this Agreement on today's date.

*** FEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF

_____ (Seal)     _____ (Seal)
                              -Borrower                                    -Borrower
Peter M. Ribando

_____ (Seal)     _____ (Seal)
                              -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                              -Borrower                                    -Borrower


Pay To The Order Of

Without Recourse
IndyMac Bank, F.S.B.
By:

Melody Spotts
Assistant Vice President


PAY TO THE ORDER OF
IndyMac Bank, F.S.B.
WITHOUT RECOURSE
THIS  22nd  DAY OF  May, 2006
PEOPLE'S MORTGAGE CORPORATION
By: Lisa M. Williams/Asst. Secretary


Pay To The Order Of

Without Recourse
IndyMac Bank, F.S.B.
By:

Melody Spotts
Assistant Vice President


IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)
DOCPREP SERVICES, INC. FORM - INDYAGMA-6868

Page 7 of 8
ORIGINAL

LOAN NO.:

IndyMac 2000(MA)
04/05

**22. SIGNATURES:** By signing below, you agree to the terms of this Agreement and you promise to pay any amounts you owe under this Agreement. You also state that you received a completed copy of this Agreement on today's date.

**\*\*\* FEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF**

_____ (Seal)          _____ (Seal)
                                    -Borrower                                         -Borrower
Peter M. Ribaudo

_____ (Seal)          _____ (Seal)
                                    -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                         -Borrower

PAY TO THE ORDER OF
IndyMac Bank, F.S.B.
WITHOUT RECOURSE
THIS 22nd DAY OF May, 2006
PEOPLE'S MORTGAGE CORPORATION
By: Lisa M. Williams/Asst. Secretary

Pay To The Order Of
Without Recourse
IndyMac Bank, F.S.B.
By: Renea Crosby
Vice President

Pay To The Order Of
Without Recourse
IndyMac Bank, F.S.B.
By: Renea Crosby
Vice President

IndyMac Bank
HELOC Agreement - I/O Min Pay - Massachusetts
8480623 (0504)
DOCPREP SERVICES, INC. FORM - INDYAGMA-6866

Page 7 of 8

IndyMac 2000(MA)

04/05

**ORIGINAL**     **LOAN NO.:** 4701696106

**EXHIBIT D - *ARIZMENDI* ORDER TO SHOW CAUSE**

Case 09-19263-PB13  Filed 06/14/11  Doc 73  Pg. 1 of 3

**Order Entered on
June 14, 2011
by Clerk U.S. Bankruptcy Court
Southern District of California**

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

Jessie M. Arizmendi

                                                    Debtor.

BANKRUPTCY NO.   09-19263-PB13

Date of Hearing: July 29, 2011
Time of Hearing: 10:00 a.m.
Name of Judge: Laura S. Taylor

## ORDER TO SHOW CAUSE: RE MISREPRESENTATION

IT IS HEREBY ORDERED as set forth on the one continuation page attached, numbered two (2).

DATED:  June 14, 2011

Judge, United States Bankruptcy Court

On May 26, 2011, this Court issued its Memorandum Decision regarding the motion for relief from stay (RS No. CNR-2) ("Stay Motion") filed by OneWest, FSB ("OneWest") in Debtor Jessie Arizmendi's chapter 13 case. The Memorandum Decision, as well as the defined terms contained therein are hereby fully incorporated herein.

OneWest supported the Stay Motion with a declaration of Mr. Brian Burnett ("OneWest Declaration"). Mr. Burnett, among other things, declared under penalty of perjury that OneWest was the real party in interest in connection with the Stay Motion "as they are the current beneficiary under the terms of a promissory note and/or Deed of Trust attached hereto." The OneWest Declaration also generally stated that OneWest received an interest in the Trust Deed pursuant to an assignment from MERS. The assignment referenced in the declaration is dated 2010 and evidences an assignment of the Trust Deed and the Note by MERS as a nominee of the Original Lender **directly** to OneWest. Finally, the OneWest Declaration, which uses the terms OneWest and Secured Creditor interchangeably, states that Secured Creditor is the : "holder and in actual physical possession of the original [Note] attached as Exhibit E."

The form of note authenticated by the OneWest Declaration is identical to the form of note attached to a proof of claim also filed in Ms. Arizmendi's bankruptcy case.

At the trial on the Stay Motion, OneWest's witness, Mr. Charles Boyle, testified that the beneficiary of the loan was Freddie Mac. This Court thereafter required post-trial briefing.

OneWest, in its post-trial brief, provided a standing argument based on a new version of the Note, which attached an allonge dated July 24, 2007 evidencing a transfer from Original Lender to IndyMac Bank, FSB and bore an endorsement in blank from IndyMac Bank, FSB. This was new information not presented in the OneWest Declaration and this note was not identical to the note authenticated by the OneWest Declaration and attached to the OneWest Proof of Claim.

This Court is concerned, thus, that OneWest provided false or misleading evidence to the Court and that OneWest did so willfully, maliciously, in bad faith, and/or for an inappropriate purpose.

Thus, pursuant to 11 U.S.C. § 105(a), Federal Rule of Bankruptcy Procedure 9011, and this Court's inherent powers,

**IT IS HEREBY ORDERED AND NOTICE IS GIVEN** that:

OneWest Bank, FSB is directed to appear before the Honorable Laura S. Taylor, Judge, United States Bankruptcy Court, on July 29, 2011, at 10:00 am, in Department No. 3, Room 129, Jacob Weinberger United States Courthouse, located at 325 West "F" Street, San Diego, California 92101-6991, to show cause why OneWest should not be subject to compensatory and/or coercive sanctions based on the matters discussed above and as set forth in more detail in the Memorandum Decision.

**NOTICE IS FURTHER PROVIDED** that:

This Court is considering imposing compensatory sanctions to include a recovery of any costs Ms. Arizmendi would not have incurred, but for OneWest's improper actions; and

This Court is also considering imposing a significant coercive sanction intended to deter any future tender of misleading evidence to any court of this district. Such a coercive sanction could include, but not be limited to, a payment to the court if future misrepresentations occur.

Any response to this Order to Show Cause must be in writing and filed with this Court no later than July 15, 2011.

*Signed by Judge Laura Stuart Taylor June 14, 2011*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In re Jessie M. Arizmendi, Bk. No. 09-19263-PB13

## CERTIFICATE OF MAILING

The undersigned, a regularly appointed and qualified clerk in the office of the United States Bankruptcy Court for the Southern District of California, at San Diego, hereby certifies that a true copy of the attached document, to wit:

### ORDER TO SHOW CAUSE: RE MISREPRESENTATION

was enclosed in a sealed envelope bearing the lawful frank of the bankruptcy judges and mailed to each of the parties at their respective addresses listed below:

Ruben F. Arizmendi, Esq.
Arizmendi Law Firm
110 West "C" Street, Suite 707
San Diego, CA 92101

Thomas Billingslea, Jr., Ch 13 Trustee
530 B Street, Suite 1500
San Diego, CA 92101

OneWest Bank **(VIA CERTIFIED MAIL and US MAIL)**
Attn: Joseph Otting, President, CEO
888 East Walnut Street
Pasadena, CA 91101

Robert R. Barnes, Esq.
Joshua A. del Castillo, Esq.
Allen Matkins Leck
    Gamble Mallory & Natsis LLP
501 West Broadway, 15th Floor
San Diego, CA 92101-3541

United States Trustee
Office of the U.S. Trustee
402 West Broadway, Suite 600
San Diego, CA 92101-8511

Said envelope(s) containing such document was deposited by me in a regular United States Mail Box in the City of San Diego, in said District on June 14, 2011.

_____
Regina A. Fabre, Judicial Assistant

CSD 1195

*Signed by Judge Laura Stuart Taylor June 14, 2011*

**EXHIBIT E - *ARIZMENDI* ORDER AFTER HEARING
ON COURT'S ORDER TO SHOW CAUSE**

Order Entered on
August 15, 2011
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

Jessie M. Arizmendi

                                                    Debtor.

BANKRUPTCY NO.  09-19263-PB13

Date of Hearing: July 29, 2011
Time of Hearing: 10:00 a.m.
Name of Judge: Laura S. Taylor

## ORDER AFTER HEARING ON COURT'S ORDER TO SHOW CAUSE TO ONEWEST BANK FSB ESTABLISHING COERCIVE SANCTIONS

IT IS HEREBY ORDERED as set forth on the continuation pages attached, numbered two (2) through three (3).

DATED:  August 12, 2011

Judge, United States Bankruptcy Court

ORDER AFTER HEARING ON COURT'S ORDER TO SHOW CAUSE
ONEWEST BANK, FSB ESTABLISHING COERCIVE SANCTIONS
DEBTOR: Jessie M. Arizmendi                                      CASE NO:09-19263-PB13

On June 14, 2011, this Court entered its Order to Show Cause Re Misrepresentation (the "OSC", docket #73) and provided notice thereof to OneWest Bank, FSB ("OneWest") in Bankruptcy Case No. 09-19263-PB13 (the "Arizmendi Case"). The hearing on the OSC was held on July 29, 2011 at 10:00 a.m. (the "Hearing"), before Judge Laura S. Taylor, in Dept. 3 of the United States Bankruptcy Court. Appearances were made as indicated on the record.

The Court issued the OSC based on concerns detailed in this Court's May 26, 2011 Memorandum Decision in relation to OneWest's motion for relief from stay (RS. No. CNR-2) ("Stay Motion"). As set forth in more detail in the Memorandum Decision, the OSC, and the Court's Tentative Ruling on the OSC, the Court preliminarily determined that OneWest provided false or misleading evidence to the Court in the form of declarations and documents submitted before or after trial on the Stay Motion, and, in particular, introduced three different versions of the promissory note allegedly relevant to the Stay Motion.

The Court, having reviewed the written response filed by OneWest in response to the OSC and having considered argument and representations by counsel for OneWest at the Hearing, now finds that OneWest made misrepresentations to the Court. The Court was misled by OneWest's submission of inaccurate, incomplete, and admittedly "sloppy" declarations and documents. In particular, the submission by OneWest of three different versions of the promissory note under the guise of being "the" relevant note was misleading. Further, OneWest's actions resulted in confusion, caused extra work, and promoted a lack of judicial trust in OneWest's representations.

In mitigation, however, the Court finds that OneWest did not seek a litigation advantage by filing such papers and documents. Further in mitigation, OneWest acknowledged that the Court has a right to require that parties seeking relief from the Court present accurate information as the basis for relief, and OneWest took proactive steps to avoid a recurrence of similar problems.

Based on the current record, the Court is not prepared to impose compensatory sanctions at this time and will establish a deadline by which debtor, Jessie Arizmendi, must submit evidence regarding costs that she would not have incurred but for OneWest's improper actions.

The Court, however, will impose coercive sanctions, as set forth below, in an attempt to assure that OneWest's future submissions to the Court do not mislead the Court. As discussed at the Hearing and as confirmed by OneWest's counsel, this is not OneWest's first OSC hearing in the Southern District of California regarding this or similar topics. But OneWest represented to the Court through its counsel that it has implemented internal procedures to rectify the problems identified by this Court. The Court trusts that OneWest can avoid assessment of the coercive sanctions ordered hereby if it follows through on the new procedures and exercises appropriate care in the future.

Now, based on the above and pursuant to 11 U.S.C. §105(a) and this Court's inherent authority,

IT IS HEREBY ORDERED that

<u>Compensatory Sanctions</u>

1. No compensatory sanctions will be assessed against OneWest pursuant to the OSC, unless, on or before 28 days after the conclusion of the parties' mediation, Ms. Arizmendi serves and files with the Court declaratory evidence of the fees and costs that she believes she would not have incurred, but for OneWest's actions as discussed in the OSC. OneWest must file any response to this submission 14 days after receipt of this submission and must obtain a hearing date and give notice of the hearing

*Signed by Judge Laura Stuart Taylor August 12, 2011*

date to the Debtor concurrently therewith.  The Court will award compensatory damages only if appropriate after review of OneWest's response and after a consideration of any argument at the hearing; and

Coercive Sanctions

2.  During the next 12 months, this Court will assess a sanction of not less than $25,000 if, after affording OneWest an opportunity to be heard, the Court determines that OneWest failed to comply with the following: in connection with any stay relief motion, proof of claim, or other request for relief OneWest must present the Court with a copy of the any relevant promissory note in its then existing form and, in particular, bearing all endorsements and attaching all allonges; unless OneWest concurrently makes clear in its declaratory evidence that the form of original note at the time of the declaration is or may be different from the form of note attached to and authenticated by the declaration.

The sanction will be payable to the Clerk of the United States Bankruptcy Court, Southern District of California, on account of each and every instance where the Court determines that OneWest fails to comply with the requirements of this order.

*Signed by Judge Laura Stuart Taylor August 12, 2011*